NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WILLY ALOHALANI TUANAKI, *Plaintiff/Appellant*,

*v.*

ALLY FINANCIAL INC., *Defendant/Appellee*.

No. 1 CA-CV 26-0036

FILED 07-21-2026

Appeal from the Superior Court in Maricopa County
No. CV2024-012762
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

COUNSEL

Willy Alohalani Tuanaki, Scottsdale
*Plaintiff/Appellant*

Bradley Arant Boult Cummings, LLP, Birmingham, AL
By Robin-Renee Keys
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Veronika Fabian joined.

**J A C O B S**, Judge:

¶1 Willy Tuanaki appeals the superior court's grant of summary judgment under Arizona Rule of Civil Procedure ("Rule") 56 in favor of Ally Capital Corp. d/b/a Ally Bank ("Ally") and the resulting award of attorneys' fees and costs. Because there was no genuine dispute of material fact under Rule 56(a) as to Ally's right to enforce a form retail installment sales contract (the " Contract"), we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. Tuanaki Defaulted Under the Contract, After Which Ally Repossessed and Sold the Vehicle.

¶2 In May 2019, Tuanaki bought a 2017 Ford Mustang from Chapman Scottsdale Autoplex, LLC (the "dealership"). To finance the purchase of the Mustang, Tuanaki executed the Contract with the dealership. It required him to make 75 monthly payments of $450.70 beginning June 2019. The dealership assigned its rights under the Contract to Ally.

¶3 Tuanaki made payments to Ally under the Contract for several years. He defaulted in September 2023 when he stopped making payments, and by failing to make any payments due thereafter. Ally notified Tuanaki that his account was delinquent and told him the amount needed to cure the default.

¶4 Rather than making a monetary payment, Tuanaki mailed Ally a packet of documents that included an "Instruction Letter" and a "Declaration of Revocation of Security Interests." In those documents, Tuanaki contended he discharged his obligations under the Contract. He claimed he was rescinding his grant to Ally of a security interest in the Mustang, thus revoking Ally's security interest and extinguishing its right to repossess. On September 15, 2023, Ally rejected those documents as unacceptable and informed Tuanaki it would reject further such efforts. Ally also restricted Tuanaki's account to accept only certified funds.

¶5 In October 2023, Ally sent Tuanaki a notice of default informing him that he could cure the delinquency under the Contract by paying $1,026.93, the amount due by November 1, 2023. The notice also informed Tuanaki that unless he cured his default, Ally might exercise its "rights under the law," including "repossessing the [Mustang]."

¶6 Tuanaki did not cure his default. In December 2023, Ally, through a third-party, repossessed the Mustang. Ally notified Tuanaki it intended to sell the Mustang unless he redeemed it by paying the full amount he owed before December 28, 2023, which was $2,350.87. Tuanaki made no such payments. In February 2024, Ally sold the Mustang for $7,200 and applied the sale proceeds to the balance that Tuanaki owed under the Contract. Ally later notified Tuanaki that he owed a deficiency amount of $10,246.58, after crediting the sale proceeds and related charges.

**B. Tuanaki Challenged Ally Bank's Authority to Enforce the Contract and Sought Discovery Concerning Ownership and Securitization of the Debt.**

¶7 In May 2024, Tuanaki sued Ally Financial, Inc., asserting claims for breach of contract, wrongful repossession, fraudulent concealment, theft of deposit, interference with commerce, and deceptive practices under 16 C.F.R. § 433.2. Tuanaki alleged Ally Financial, Inc.: improperly rejected his attempted payment; unlawfully restricted the methods by which he could make payments; failed to respond to his requests concerning the ownership and securitization of the Contract; lacked authority to enforce the debt or repossess the Mustang; and wrongfully retained interests and proceeds associated with the promissory note.

¶8 Ally Financial Inc. and Ally answered the complaint, denied liability, and asserted that Ally — not Ally Financial Inc. — was the proper party to the action. Ally argued the dealership assigned the Contract to it shortly after its execution and before any payments became due or any default occurred. Ally also asserted a counterclaim for the deficiency balance remaining after the repossession and sale of the Mustang.

¶9 The parties thereafter engaged in discovery. In December 2024, Tuanaki sought documents concerning the ownership, funding, transfer, servicing, and alleged securitization of the Contract, including records he contended would establish whether Ally was entitled to enforce the Contract and repossess the Mustang.

¶10 On April 2, 2025, Ally moved for summary judgment. It argued that: undisputed evidence established it held the Contract; Tuanaki defaulted by failing to make the required payment; and the repossession and sale of the Mustang were authorized by the Contract. Ally further argued that Tuanaki's claims concerning his attempted tender of payment, the alleged securitization of the debt, and Ally's authority to enforce the

Contract failed as a matter of law. Ally also sought judgment on its counterclaim for the remaining deficiency balance.

¶11 Two days later, the parties filed a Rule 26(d) statement concerning a discovery dispute. The parties stated that Tuanaki sought additional document production concerning the handling, monetization, and alleged securitization of the Contract, as well as related tax and accounting records. Ally objected that: certain requested materials contained confidential or proprietary information; certain requested tax documents did not exist because the debt had not been cancelled or forgiven; and other requests exceeded the scope of permissible discovery or sought information irrelevant to Tuanaki's claims and defenses. Ally further advised that it intended to seek a protective order before producing certain documents to restrict the disclosure of confidential and proprietary information to third parties.

¶12 On April 10, 2025, the court ruled that Ally was not required to produce documents that did not exist or were not within its possession, custody, or control. The court ordered the parties to meet and confer regarding a proposed protective order before it would address any further disputes and directed Ally to move for a protective order if the parties were unable to reach an agreement. Ally later did so, while Tuanaki maintained that the requested materials were necessary to challenge Ally's asserted interest in the debt and its authority to repossess the Mustang.

¶13 On July 8, 2025, the superior court granted Ally's motion to strike numerous filings submitted by Tuanaki, including his motion to compel discovery and opposition to the motion for protective order. The court found that Tuanaki had "improperly, unilaterally changed the case captions on his filings without leave of court" and had "improperly, unilaterally changed the name of the Plaintiff in this case from his own to ONYX Enterprise Trust" while claiming to act as its "fiduciary." The court further found that Tuanaki "continue[d] to file documents with the Court that lack a legal or factual basis, and in which he asserts legal theories that have no basis in law, despite prior warnings from the Court," and had "unnecessarily expanded these proceedings and wasted the time and resources of Defendant and this Court with his baseless filings." The court thus struck numerous filings and sanctioned Tuanaki, ordering him to reimburse Ally for the attorneys' fees and costs it incurred in preparing the motion to strike.

¶14 Despite that ruling, Tuanaki continued filing documents with the superior court. On July 14, 2025, he filed amended versions of his

motion to compel discovery and opposition to Ally's motion for protective order, along with a supplemental exhibit packet supporting his discovery requests. He also filed a motion for summary judgment, a motion for retroactive default judgment, various notices concerning alleged procedural errors and discovery issues, and additional filings relating to damages and the ownership of the claims asserted in the action. In the weeks that followed, Tuanaki filed additional notices, motions, and responses relating to attorneys' fees, summary judgment, and case-management issues. Tuanaki never filed a Rule 56(d) motion, however, asking to pause summary judgment briefing to seek additional, specified discovery that would allow him to resist summary judgment.

### C. The Court Granted Summary Judgment and Entered Judgment for Ally.

¶15 On August 19, 2025, the superior court granted Ally's motion for summary judgment. The court noted that Tuanaki failed to respond to the motion and therefore did not controvert Ally's statement of facts. After independently reviewing the record, the court found that the dealership assigned the Contract to Ally, that Ally remained entitled to enforce the Contract, and that Tuanaki defaulted by failing to make the required payments. The court further found that the documents Tuanaki submitted to Ally did not constitute payment under the Contract, that Ally properly repossessed and sold the Mustang after Tuanaki failed to cure the default, and that no genuine dispute of material fact existed. The court entered judgment in Ally's favor on all claims and counterclaims and deemed Tuanaki's remaining motions moot.

¶16 Following entry of summary judgment, Ally moved for attorneys' fees and costs. Tuanaki responded by filing a motion to strike one of Ally's exhibits, a motion for leave to file an untimely opposition to the fee application, and an opposition to the fee request. Ally also moved to designate Tuanaki a vexatious litigant.

¶17 On October 22, 2025, the superior court entered final judgment. Consistent with its summary judgment ruling, the court entered judgment in favor of Ally Capital Corp. d/b/a Ally Bank, which the judgment notes was "erroneously sued as Ally Financial Inc." The court entered judgment in favor of Ally on all of Tuanaki's claims and on Ally's breach-of-contract counterclaim. The court awarded Ally $10,246.58 as the remaining balance owed under the Contract, $63,050.00 in attorneys' fees and $7,121.52 in costs as the prevailing party under the Contract and A.R.S. § 12-341.01, and an additional $4,320.00 in attorneys' fees and $435.51 in

costs incurred in connection with Ally's successful motion to strike. The court entered a total judgment of $85,173.61 and certified the judgment as final under Rule 54(c).

¶18 Tuanaki subsequently moved to alter or amend the judgment under Rules 52(b), 59(d), and 60(a)–(b). In that motion, Tuanaki argued that the superior court entered judgment before resolving several pending motions, including his motion to compel discovery, opposition to Ally's motion for protective order, opposition to Ally's application for attorneys' fees, and opposition to Ally's motion to designate him a vexatious litigant. He further asserted that the court improperly granted summary judgment while discovery disputes remained unresolved, failed to make independent findings supporting its attorneys' fees award, and adopted Ally's proposed judgment without modification. Tuanaki requested that the court vacate or amend the judgment, reopen discovery, and adjudicate the motions he contended remained pending at the time judgment was entered.

¶19 Tuanaki appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(1).

**DISCUSSION**

I. **The Court Properly Granted Summary Judgment Because Tuanaki Failed to Identify a Genuine Dispute of Material Fact.**

¶20 We review the grant of summary judgment *de novo*, reviewing the record in the light most favorable to the non-moving party. *Amtrust Bank v. Fossett*, 223 Ariz. 438, 439 ¶ 4 (App. 2009). When a defendant moving for summary judgment shows that the plaintiff has insufficient evidence to carry their ultimate burden of proof at trial, the burden shifts to the non-moving party to present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119 ¶ 26 (App. 2008); Ariz. R. Civ. P. 56(c), (e). Moreover, "Rule 56 does not require that discovery be completed before a court rules on a motion for summary judgment." *Hormel v. Maricopa County*, 224 Ariz. 454, 461 ¶ 29 (App. 2010).

¶21 Tuanaki argues the court prematurely granted summary judgment because discovery remained pending. He contends the requested discovery would have shown Ally lacked authority to enforce the Contract because of alleged assignment or securitization of the debt. Ally responds that Tuanaki never identified evidence creating a genuine factual dispute, failed to rebut the undisputed evidence establishing Ally's right to enforce the Contract, and never sought relief under Rule 56(d). We agree with Ally.

¶22　　　First, Tuanaki did not respond to Ally's motion for summary judgment disputing the material facts established by Ally's evidence. The superior court found Tuanaki failed to timely respond and therefore did not controvert Ally's statement of facts.

¶23　　　Second, the record establishes that Tuanaki executed the Contract, the dealership assigned the Contract to Ally shortly after execution, Tuanaki defaulted by failing to make the required payments, and Ally exercised its contractual remedies after Tuanaki failed to cure the default. Rather than making the required payments, Tuanaki submitted self-generated documents that the court found were not a valid form of payment under the Contract. After Tuanaki failed to cure the default, Ally repossessed the Mustang, provided the required statutory notices, sold the vehicle, and applied the sale proceeds to the outstanding balance.

¶24　　　Tuanaki points to no evidence contradicting those facts. He identifies no evidence that: the dealership did not assign the Contract to Ally; he satisfied his payment obligations; or that any alleged securitization deprived Ally of its right to enforce the Contract. Instead, he relies on conclusory assertions that discovery might reveal such evidence. But speculation that evidence may exist is insufficient to defeat summary judgment. *See* Ariz. R. Civ. P. 56(c)(3)(B).

¶25　　　Third, while Tuanaki argues the superior court erred by granting summary judgment while he was seeking discovery, he never made a request under Rule 56(d) to defer consideration of Ally's motion for summary judgment to allow him to obtain specific, necessary discovery that would create an issue of material fact. Even on appeal, while Tuanaki asserts that additional discovery would reveal information concerning "standing," "entitlement to enforce," "chain-of-title," and "securitization," he never identifies what evidence he expected to uncover or explains how it would have created a genuine dispute of material fact.

¶26　　　As such, Tuanaki's argument that the superior court ruled prematurely likewise fails. Although discovery disputes remained pending, Rule 56 did not require the superior court to postpone ruling on Ally's properly supported motion for summary judgment while discovery continued. *See Hormel*, 224 Ariz. at 461 ¶ 29. Tuanaki has shown no error in the superior court's choice to decide the summary judgment motion before discovery concluded.

¶27 Tuanaki has shown no genuine dispute of material fact as to Ally's right to enforce the Contract. As such, he has failed to show any error in the court's grant of summary judgment.

**II.     The Court Properly Awarded Attorneys' Fees Because Ally Was the Successful Party in an Action Arising Out of the Contract.**

¶28 Tuanaki argues the court erred by awarding Ally its attorneys' fees for the same reasons he argues summary judgment was improper and because he says the court failed to make sufficient findings supporting the award. Because Ally prevailed on all claims and counterclaims arising from the Contract, it was entitled to attorneys' fees under the Contract.

## CONCLUSION

¶29 We affirm. Ally requests an award of attorneys' fees on appeal pursuant to the terms of the Contract, and under A.R.S. § 12-341.01 and ARCAP 21(a)(1). We grant Ally its reasonable attorneys' fees under the Contract upon compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR

8